**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RICKY LYNN, a/k/a Rickey Lynn,

    Defendant-Appellant.

No. 99-6017
(W.D. Okla.)
(D.Ct. No. CR-98-97-T)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **EBEL**, and **LUCERO**, Circuit Judges.

_____

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

    Appellant Ricky (a/k/a Rickey) Lynn appeals his sentence following his

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

guilty plea and conviction. Specifically, Mr. Lynn appeals the quantity of cocaine

the district court attributed to him in calculating his sentence under U.S.S.G

§ 1B1.3. We exercise our jurisdiction under 28 U.S.C. § 1291 and affirm.


BACKGROUND

Mr. Lynn pled guilty to maintaining a place for the purpose of distributing

and using a controlled substance. In the presentencing report, the government

found Mr. Lynn accountable for a total of 183.16 grams of cocaine, including

fourteen grams attributable to a 1997 incident and 168 grams involving sales at

Mr. Lynn's home in early 1998. Mr. Lynn objected to the total quantity of

cocaine attributed to him in the presentencing report.[1]


At Mr. Lynn's sentencing hearing, the government presented testimony of

three individuals to support the amount of cocaine reflected in the presentencing

report. The first witness, Dennis Reed, testified that in 1997, he took a trip with

Mr. Lynn, who transported George Mitchell, a dealer selling crack cocaine. Mr.

Reed testified Mr. Lynn received one ounce (twenty-eight grams) of cocaine in

compensation for driving Mr. Mitchell. Mr. Reed further stated he could identify

---

[1] Mr. Lynn does not contest the quantity of the .42 and .74 grams of cocaine he sold to an informant.

an ounce of cocaine merely by sight based on his long-time experience with cocaine.

Federal Bureau of Investigation Special Agent Nicholas Manns testified he corroborated Mr. Reed's testimony by making Mr. Reed take him to and identify the apartment of Mr. Mitchell, which he did. Agent Manns also testified he believed Mr. Mitchell did not possess a driver's license, and that Mr. Reed's testimony on transporting Mr. Mitchell corresponded with statements of other witnesses who similarly transported him and received a quantity of at least one-half ounce of cocaine in compensation. In addition, Agent Manns testified Mr. Reed's testimony conformed with the statements of other cocaine dealers involved in the case, who explained they rode as passengers and let someone else drive in order to avoid suspicion in the event of a police stop. Agent Manns also stated the fourteen grams of cocaine attributed to Mr. Lynn in the presentencing report was a conservative estimate in light of Mr. Reed's testimony that Mr. Lynn actually received twenty-eight grams of cocaine from Mr. Mitchell for transporting him.

As to the 168 grams involving sales at Mr. Lynn's home in early 1998, the government presented the testimony of John Nunn, who stated he traveled to Elk

City for two months, from January to February of 1998, for the purpose of selling cocaine at the home of Regina Evans, a neighbor of Mr. Lynn's. Prior to presenting his testimony, Mr. Nunn told agents he saw another cocaine seller, known as "Bruce," sell cocaine at Mr. Lynn's home twice a week during those two months. However, Mr. Nunn's hearing testimony differed from his statement because he said he saw Bruce sell cocaine at Mr. Lynn's home "several times," "eight to ten times,"or "most likely ... more." In order to clarify the number of cocaine selling incidents, the government on redirect examination asked the following questions:

> Q. Mr. Nunn, earlier you said you thought you went to Rickey Lynn's house probably eight or [ten] times. Could you tell us how many times a week you would go?
>
> A. About two times a week, sir.
>
> Q. Okay. Do you recall that you had an interview with Special Agent Manns here of the FBI?
>
> A. Yes, sir.
>
> Q. And do you remember that you told him that it was approximately two times a week during that two-month period?
>
> A. Yes, sir.

Based on his experience selling drugs, Mr. Nunn testified he could identify quantities of cocaine by sight and the amount of cocaine he saw Bruce sell at Mr. Lynn's house ranged between one-half to one ounce (*i.e.,* fourteen to twenty-eight

grams). On cross-examination, he admitted the amounts he saw and believed to be one-half ounce could at times total only eleven or twelve grams.

According to Agent Manns, Mr. Nunn's testimony corresponded with statements of other dealers, including George Mitchell, who told him they always brought a minimum of one-half ounce of cocaine to sell in Elk City. Agent Manns also testified that another witness, Vicky Edmondson, corroborated Mr. Nunn's testimony because she saw Bruce with an ounce of cocaine on at least one prior occasion and also purchased $100 to $200 amounts from him on numerous occasions. Agent Manns testified, based on his investigation, attributing only one-half ounce of cocaine to Mr. Lynn for each sale in January and February of 1998 resulted in a very conservative estimate of the drugs sold at Mr. Lynn's home by Bruce.

Finally, both Mr. Reed and Mr. Nunn testified they entered plea agreements with the government concerning their own involvement in cocaine sales. While Mr. Reed hoped "to get something out of testifying" against Mr. Lynn, he also stated he was not certain of getting any downward departure or a lesser sentence. Mr. Nunn testified the government did not make any promise of a reward for his testifying against Mr. Lynn.

DISCUSSION

On appeal, Mr. Lynn contends the government did not sufficiently prove the drug quantities attributed to him by a preponderance of evidence. Specifically, Mr. Lynn contends Mr. Reed's testimony was incredible because he: (1) first told agents the quantity given to Mr. Lynn by Mr. Mitchell totaled fourteen grams, but later testified it was twenty-eight grams; (2) could only identify the year and not an approximate date of their car trip with Mr. Mitchell; (3) experienced a history of felony convictions; and (4) hoped to obtain a lenient sentence by testifying against him. As to Mr. Nunn's testimony, Mr. Lynn claims it was similarly unreliable because his initial statement – on seeing Bruce sell cocaine twice a week for two months – conflicted with his later testimony he saw Bruce sell cocaine only eight to ten times. Mr. Lynn also contests the one-half ounce of cocaine attributed to each of Bruce's sales, arguing this amount is based merely on Mr. Nunn's own estimates and does not reflect Mr. Nunn's testimony that, at times, the amount could have totaled only eleven or twelve grams of cocaine.

We begin with an examination of the standards we must apply. We review the district court's factual findings regarding the quantity of drugs for which Mr. Lynn is held responsible for clear error. *United States v. Hooks*, 65 F.3d 850, 854

-6-

(10th Cir. 1995), *cert. denied,* 516 U.S. 1083 (1996).  We will not disturb the district court's factual findings unless they are unsupported by the record or, after reviewing all the evidence, we are firmly convinced an error occurred.  *Id.* Because credibility determinations are for the district court, we will not reexamine the witnesses' credibility on appeal.  *Id.*  It is the government's burden to prove the quantity of drugs for sentencing purposes by a preponderance of the evidence.  *Id.*  "The district court may estimate the quantity of drugs involved provided the information underlying the estimate possesses sufficient indicia of reliability to support its probable accuracy."  *Id*. (quotation marks and citation omitted).

With these standards in mind, we conclude the district court did not err in finding the government sufficiently proved the drug quantities attributable to Mr. Lynn by a preponderance of evidence.  Mr. Reed clearly testified Mr. Lynn received twenty-eight grams of cocaine from Mr. Mitchell for transporting him. Agent Manns clarified the fourteen grams of cocaine cited in the presentencing report came from his own assumption of the quantity transported and not from Mr. Reed, who did not discuss the cocaine's weight in his interview.  Even though the district court knew Mr. Reed could not identify the approximate date of the car trip with Mr. Mitchell, had a history of felony convictions, and entered a plea

bargain with the government, it nevertheless found him a credible witness after observing his testimony and demeanor during direct and cross-examination. We will not reexamine this credibility determination on appeal and are not otherwise convinced the district court erred in relying on Mr. Reed's testimony.

The district court also credited the testimony of Mr. Nunn. While Mr. Nunn generally referred to seeing Bruce sell cocaine at Mr. Lynn's house several times or eight to ten times, he nevertheless clearly stated, when specifically asked by agents and again at the hearing, that he saw Bruce sell cocaine twice a week for two months – or sixteen times. As to Mr. Nunn's estimates of the amount sold, he plainly testified it ranged from one-half ounce (fourteen grams) to one ounce (twenty-eight grams), even though he admitted on cross-examination that what he saw as one-half ounce, at times, may have consisted of only eleven or twelve grams. Similarly, Agent Manns testified other dealers involved in selling cocaine in the area typically sold cocaine in units of one-half to one ounce. Based on this testimony, the district court found Mr. Lynn responsible for at least 168 grams of cocaine sold in his home. As Agent Manns stated, 168 grams is a conservative estimate, given 224 to 448 grams of cocaine could have been attributed to Mr. Lynn (*i.e.*, sixteen sales times fourteen grams (one-half ounce) equals 224 total grams; sixteen sales times twenty-eight grams (one ounce) equals

448 total grams). Moreover, if calculated at eleven grams instead of one-half ounce, as insisted by Mr. Lynn, the amount of cocaine would still exceed 168 grams, resulting in a total of 176 grams sold (*i.e.*, eleven grams times sixteen incidents equals 176 total grams). Thus, the district court's estimate of the quantity of drugs involved is supported by a sufficient indicia of reliability to support its probable accuracy. For these reasons, we conclude the district court did not err in calculating the quantity of cocaine attributed to Mr. Lynn in determining his sentence under U.S.S.G. § 1B1.3.

Accordingly, the district court's judgment is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge